UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK RODRIGUEZ AND KINA THOMAS, Individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GORES GUGGENHEIM, INC. N/K/A POLESTAR AUTOMOTIVE HOLDING UK PLC; ALEC E. GORES; ANDREW M. ROSENFIELD; MARK R. STONE; ANDREW MCBRIDE; RANDALL BORT; ELIZABETH MARCELLINO; NANCY TELLEM; THOMAS INGENLATH; JOHAN MALMQVIST; and PER ANSGAR,<br><br>    Defendants. | **Case No:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

1

Plaintiffs Frank Rodriguez and Kina Thomas ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants (defined below), allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, which included, among other things, a review of the Defendants' public documents, and announcements made by Defendants, public filings, wire and press releases published by and regarding Gores Guggenheim, Inc. n/k/a Polestar Automotive Holding UK PLC ("Polestar" or the "Company"), and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action brought on behalf of all persons or entities other than Defendants who (1) purchased or otherwise acquired the securities of Polestar between June 24, 2022 and January 16, 2025, both dates inclusive (the "Class Period"); and/or (2) beneficially owned and/or held the securities of Gores Guggenheim, Inc. ("GGI") as of the record date of May 18, 2022 and were provided the final proxy statement/prospectus filed pursuant to SEC Rule 424(b)(3) on May 25, 2022 (the "Final Proxy Statement/Prospectus"). Plaintiffs

seek to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to Sections 10(b), 14(a), and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78n(a) and 78t(a)) and Rules 10b-5 and 14a-9 (17 C.F.R. §§ 240.10b-5 and 240.14a-9) promulgated thereunder by the SEC.

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.    In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff Frank Rodriguez, as set forth in the accompanying certification, incorporated by reference herein, bought Polestar securities during the Class Period. Plaintiff Rodriguez also owned GGI securities prior to the record date of May 18, 2022 and was provided the Final Proxy Statement/Prospectus, and was economically damaged thereby.

7.     Plaintiff Kina Thomas, as set forth in the accompanying certification, incorporated by reference herein, bought Polestar securities during the Class Period. Plaintiff Thomas also owned GGI securities prior to the record date of May 18, 2022 and was provided the Final Proxy Statement/Prospectus, and was economically damaged thereby.

8.     Polestar purports to be "the Swedish electric performance car brand with a focus on uncompromised design and innovation, and the ambition to accelerate the change towards a sustainable future."

9.     The Company is incorporated in England and Wales and has its principal place of business in Gothenburg, Sweden. Polestar Automotive USA Inc. is located at 777 MacArthur Blvd. Mahwah, NJ 07430.

10.     Polestar's Class A American Depositary Shares ("ADS" or "ADSs") trade on the NASDAQ exchange under the ticker symbol "PSNY."

11.     Polestar became a publicly traded company by virtue of a merger (the "Merger") with a blank check company, or special purpose acquisition company ("SPAC"), Gores Guggenheim, Inc. ("GGI").

12.     Defendant Alec E. Gores was GGI's Chairman of the Board from December 2020 to June 2022.

13.     Defendant Andrew M. Rosenfield was GGI's President and director from February 2021 to June 2022.

14.     Defendant Mark R. Stone was GGI's CEO from December 2020 to June 2022.

15.     Defendant Andrew McBride was GGI's CFO and Secretary from July 2020 to June 2022.

16.     Defendant Randall Bort was a GGI director from March 2021 to June 2022.

17.     Defendant Elizabeth Marcellino was a GGI director from March 2021 to June 2022.

18.     Defendant Nancy Tellem was a GGI director from March 2021 to June 2022.

19.     Defendants Gores, Rosenfield, Stone, McBride, Bort, Marcellino and Tellem are collectively referred to herein as the "GGI Individual Defendants."

20.    Defendant Thomas Ingenlath served as the Company's Chief Executive Officer ("CEO") from the beginning of the Class Period until October 1, 2024.

21.    Defendant Johan Malmqvist served as the Company's Chief Financial Officer ("CFO") since from the beginning of the Class Period until January 11, 2024.

22.    Defendant Per Ansgar has served as the Company's CFO since January, 2024.

23.    Defendants Ingenlath, Malmqvist, and Ansgar are collectively referred to herein as the "Polestar Individual Defendants."

24.    Each of the Polestar Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

6

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

25.    The Company is liable for the acts of the Polestar Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

26.    The scienter of the Polestar Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

27.    The GGI Individual Defendants and the Polestar Individuals are collectively referred to herein as the "Individual Defendants."

28.    The Company, the GGI Individual Defendants and the Polestar Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

29.    On September 27, 2021, GGI, a blank check company or SPAC, entered

into a proposed business combination with Polestar whereby Polestar would become a publicly traded company by merging with GGI.

30.     Before the business combination could be consummated and turn Polestar into a publicly listed company, however, the shareholders of GGI had to consider and vote upon whether to approve the merger.

31.     On May 25, 2022, the Final Proxy Statement/Prospectus was filed with the SEC. The GGI Individual Defendants were responsible for the statements in the Final Proxy Statement/Prospectus due to their control over GGI. The Final Proxy Statement/Prospectus stated:

> This document, which forms part of a registration statement on Form F-4 filed with the U.S. Securities and Exchange Commission (the "SEC") by ListCo, constitutes a prospectus of ListCo under Section 5 of the Securities Act, with respect to the Post-Combination Company Shares and Post-Combination Company Warrants underlying the ADSs and ADWs to be issued to the GGI stockholders if the Business Combination described herein is consummated. This document also constitutes a notice of meeting and a proxy statement/prospectus under Section 14(a) of the U.S. Securities Exchange Act of 1934, as amended (the "Exchange Act") with respect to (i) the special meeting of GGI stockholders at which GGI stockholders will be asked to consider and vote upon the Business Combination Proposal, among other matters[.]

32.     The Final Proxy Statement/Prospectus contained a summary of material financial analyses prepared by GGI's financial advisor, and specifically included a number of financial projections that it called the ListCo Projections.

33.     The Final Proxy Statement/Prospectus stated that: "[w]ith respect to the

ListCo Projections, upon the advice of GGI, [the financial advisor] assumed that such projections were reasonably prepared on a basis reflecting the best currently available estimates and judgments of the managements of GGI and Polestar as to the future financial performance of ListCo and its subsidiaries and that ListCo and its subsidiaries will perform in accordance with such projections."

34.     The Final Proxy Statement/Prospectus continued that: "Polestar provided GGI with its internally prepared projections for the fiscal years ending December 31, 2021 through December 31, 2025 in connection with GGI's evaluation of Polestar. In addition, GGI utilized the projections provided by Polestar to calculate Unlevered Free Cash Flow for the fiscal years ending December 31, 2021 through December 31, 2025."

35.     The Final Proxy Statement/Prospectus then provided the projections:

The key elements of the projections prepared by Polestar management, and of Unlevered Free Cash Flow as prepared by GGI management, are summarized below:

| | 2021E | 2022E | 2023E | 2024E | 2025E |
|---|---|---|---|---|---|
| | | For the year ended December 31, | | | |
| | | (in millions of $, except for volumes and percentages) | | | |
| Global volumes | 29,000 | 65,000 | 123,751 | 224,723 | 289,920 |
| Total Revenue | $ 1,594 | $ 3,171 | $ 6,685 | $ 13,249 | $ 17,783 |
| *% Growth* | — | *99.0%* | *110.8%* | *98.2%* | *34.2%* |
| Total Cost of Goods Sold | (1,450) | (2,657) | (5,242) | (10,585) | (13,878) |
| Gross Profit | $ 144 | $ 514 | $ 1,443 | $ 2,664 | $ 3,906 |
| *% Margin* | *9.0%* | *16.2%* | *21.6%* | *20.1%* | *22.0%* |
| Total Operating Expenditures | ($ 1,106) | ($ 1,118) | ($ 1,409) | ($ 1,973) | ($ 2,316) |
| Adjusted EBITDA(1)(7) | ($ 696) | ($ 425) | $ 338 | $ 1,155 | $ 2,143 |
| *% Margin* | *NM* | *NM* | *5.1%* | *8.7%* | *12.0%* |
| Less: Depreciation and Amortization | ($ 266) | ($ 178) | ($ 305) | ($ 464) | ($ 553) |
| Adjusted EBIT(2)(7) | ($ 962) | ($ 603) | $ 34 | $ 691 | $ 1,589 |
| Less: Net Financial Items(3) | (53) | (62) | (77) | (82) | (29) |
| Adjusted EBT(4)(7) | ($ 1,016) | ($ 665) | ($ 43) | $ 609 | $ 1,561 |
| Less: Income Taxes | 0 | 0 | 0 | 0 | 0 |
| Net Income | ($ 1,016) | ($ 665) | ($ 43) | $ 609 | $ 1,561 |
| Plus: Net Financial Items(3) | 53 | 62 | 77 | 82 | 29 |
| Plus: Depreciation and Amortization | 266 | 178 | 305 | 464 | 553 |
| Less: Investments in Intangible Assets(5) | (481) | (339) | (216) | (305) | (410) |
| Less: Investments in Plant, Property and Equipment | (192) | (247) | (333) | (390) | (248) |
| Less: Change in Net Working Capital(5) | (168) | (596) | (157) | (335) | (118) |
| Unlevered Free Cash Flow(6)(7) | ($ 1,536) | ($ 1,607) | ($ 367) | $ 125 | $ 1,367 |

(1)  Adjusted EBITDA represents net income before income taxes, net financial items and depreciation and amortization.
(2)  Adjusted EBIT represents net income before income taxes and net financial items.
(3)  Net financial items represents interest expense.
(4)  Adjusted EBT represents net income before income taxes.
(5)  Does not take into account the effects of the approximate $101 million reduction in investments in intangible assets and the approximate $397 million positive adjustment to change in net working capital for the year ending December 31, 2021, attributable to proceeds from the approximate $498 million from the Volvo Cars Preference Subscription Agreement, which are reflected in the ListCo Projections below.
(6)  Unlevered Free Cash Flow is calculated by taking net income, adding back net financial items, depreciation and amortization and subtracting investments in intangible assets, investments in plant, property and equipment and change in net working capital.
(7)  Adjusted EBIT, Adjusted EBT, Adjusted EBITDA and Unlevered Free Cash Flow are non-GAAP financial measures.

206

In addition, GGI (a) subtracted from the projections received from Polestar management and reviewed and approved by GGI with respect to the year ending December 31, 2021 Polestar's actual financial results for the six month period ending June 30, 2021 received from Polestar management to provide an estimate for the six month period ending December 31, 2021 and (b) reflected an increase in Unlevered Free Cash Flow for fiscal year ending December 31, 2022 of approximately $498 million in connection with the Volvo Cars Preference Amount (the projections prepared by Polestar management and reviewed and approved by GGI for the years ending December 31, 2021 through 2025, taking into account the foregoing, the "*ListCo Projections*"). GGI provided the ListCo Projections to Barclays for purposes of a discounted cash flow analysis performed by Barclays in connection with rendering its fairness opinion.

| | Six months ending December 31, 2021E | 2022E | Fiscal Year Ending December 31, 2023E | 2024E | 2025E |
|---|---|---|---|---|---|
| | (in millions of $, except for percentages) | | | | |
| Total Revenue | $ 1,054 | $ 3,171 | $ 6,685 | $13,249 | $17,783 |
| % Growth | — | — | 110.8% | 98.2% | 34.2% |
| Adjusted EBITDA[(1)(6)] | (440) | (425) | 338 | 1,155 | 2,143 |
| % Margin | nm | nm | 5.1% | 8.7% | 12.0% |
| % Growth | nm | nm | nm | 241.5% | 85.6% |
| Less: Depreciation & Amortization | (144) | (178) | (305) | (464) | (553) |
| % Revenue | 13.7% | 5.6% | 4.6% | 3.5% | 3.1% |
| Adjusted EBIT[(2)(6)] | (584) | (603) | 34 | 691 | 1,589 |
| Less: Taxes | — | — | — | — | — |
| Adjusted Unlevered Net Income[(3)(6)] | (584) | (603) | 34 | 691 | 1,589 |
| Plus: Depreciation and Amortization | 144 | 178 | 305 | 464 | 553 |
| Less: Investments in Intangible Assets | (481) | (339) | (216) | (305) | (410) |
| Less: Investments in Plant, Property and Equipment | (174) | (247) | (333) | (390) | (248) |
| Less: Change in Net Working Capital[(4)] | (223) | (198) | (157) | (335) | (118) |
| Unlevered Free Cash Flow[(5)(6)] | ($ 1,318) | ($1,209) | ($ 367) | $ 125 | $ 1,367 |

(1)     Adjusted EBITDA represents net income before income taxes, net financial items and depreciation and amortization.
(2)     Adjusted EBIT represents net income before income taxes and net financial items.
(3)     Adjusted Unlevered Net Income represents net income before net financial items.
(4)     Assumes an approximate $101 million reduction in investments in intangible assets and an approximate $397 million positive adjustment to change in net working capital for the six months ending December 31, 2021, attributable to proceeds from the approximate $498 million from the Volvo Cars Preference Subscription Agreement.
(5)     Unlevered Free Cash Flow is calculated by taking net income, adding back net financial items, depreciation and amortization and subtracting investments in intangible assets, investments in plant, property and equipment and change in net working capital.
(6)     Adjusted EBITDA, Adjusted EBIT, Adjusted Unlevered Net Income and Unlevered Free Cash Flow are non-GAAP financial measures.

36.    In addition, the Final Proxy Statement/Prospectus included sales projections for the years 2022 through 2025:

Polestar commenced operations in 2017 and launched the Polestar 1 in 2019. However, the Polestar 1 was not intended to be a mass production vehicle and only a limited number of Polestar 1 car models were sold. Polestar discontinued manufacture of the Polestar 1 at the end of 2021. Polestar launched the Polestar 2 in 2020 and expects to launch and start to sell three new vehicle models going forward, starting with the Polestar 3 expected to launch in 2022 and followed by the Polestar 4 (expected to launch in 2023) and Polestar 5 (expected to launch in 2024). Sales of the Polestar 2 accounted for the majority of the approximately 29,000 vehicle sales in 2021. Polestar's assumptions with respect to sales volumes during the period from December 31, 2021 through 2025 reflect the anticipated development and launch of future Polestar models, as follows:

- Polestar anticipates sales of approximately 65,000 vehicles in 2022, principally or wholly comprised of Polestar 2 vehicles.

- Polestar anticipates sales of approximately 124,000 vehicles in 2023, comprised primarily of Polestar 2 and 3 vehicles and a limited number of Polestar 4 vehicles.

- Polestar anticipates sales of 225,000 vehicles in 2024, including the addition of Polestar 5 vehicles; and

- Polestar anticipates sales of approximately 290,000 vehicles in 2025.

37.    The Final Proxy Statement/Prospectus also contained a comparable company analysis in which it compared the financials of ListCo to a range of similar

publicly traded companies such as Lucid, Tesla, NIO and Xpeng.

38.    Based on the Final Proxy Statement/Prospectus, the Merger was approved.

39.    On June 23, 2022, Polestar filed its registration statement on Form 8-A, and Polestar shares started trading on June 24, 2022.

40.    On November 14, 2022, before the market opened, the Company filed with the SEC a current report on Form 6-K signed by defendants Ingenlath and Malmqvist. Attached to this 6-K were the Company's unaudited financial statements for the three months ended September 30, 2022 (the "3Q22 Unaudited Financial Results"), which were presented as the following:

The Polestar Group
Unaudited Condensed Consolidated Statement of Income and Comprehensive Income (Loss)
(in thousands of U.S. dollars except per share data and unless otherwise stated)

| Consolidated Statement of Income (Loss) | Note | For the three months ended September 30, | | For the nine months ended September 30, | |
|---|---|---|---|---|---|
| | | 2022 | 2021 | 2022 | 2021 |
| Revenue | 2 | 435,449 | 212,896 | 1,476,746 | 747,674 |
| Cost of sales | | (431,390) | (247,647) | (1,419,271) | (746,614) |
| **Gross profit (loss)** | | 4,059 | (34,751) | 57,475 | 1,060 |
| Selling, general, and administrative expense | | (178,643) | (199,290) | (625,424) | (478,144) |
| Research and development expense | | (24,598) | (50,529) | (123,353) | (157,400) |
| Other operating income (expense), net | | 2,781 | (8,291) | (17,961) | (23,060) |
| Listing expense | 9 | — | — | (372,318) | — |
| **Operating loss** | | (196,401) | (292,861) | (1,081,581) | (657,544) |
| Finance income | | 711 | 9,606 | 1,485 | 24,801 |
| Finance expense | | (60,539) | (16,135) | (111,966) | (28,511) |
| Fair value change - Earn-out rights | 9 | 546,961 | — | 965,668 | — |
| Fair value change - Class C Shares | 9 | 14,059 | — | 35,590 | — |
| **Income (loss) before income taxes** | | 304,791 | (299,390) | (190,804) | (661,254) |
| Income tax expense | | (5,404) | (3,058) | (12,543) | (9,414) |
| **Net income (loss)** | | 299,387 | (302,448) | (203,347) | (670,668) |
| Net income (loss) per share (in U.S. dollars) | 4 | | | | |
| Basic | | 0.14 | (1.30) | (0.22) | (2.94) |
| Diluted | | 0.14 | (1.30) | (0.22) | (2.94) |
| **Consolidated Statement of Comprehensive Income (Loss)** | | | | | |
| Net income (loss) | | 299,387 | (302,448) | (203,347) | (670,668) |
| Other comprehensive income (loss): | | | | | |
| Items that may be subsequently reclassified to the Consolidated Statement of Loss: | | | | | |
| Exchange rate differences from translation of foreign operations | | 4,688 | (10,965) | 15,347 | (29,257) |
| **Total other comprehensive income (loss)** | | 4,688 | (10,965) | 15,347 | (29,257) |
| **Total comprehensive income (loss)** | | 304,075 | (313,413) | (188,000) | (699,925) |

The accompanying notes are an integral part of these Unaudited Condensed Consolidated Financial Statements.

3

The Polestar Group
Unaudited Condensed Consolidated Statement of Financial Position
(in thousands of U.S. dollars unless otherwise stated)

| | Note | September 30, 2022 | December 31, 2021 |
|---|---|---|---|
| **Assets** | | | |
| Non-current assets | | | |
| Intangible assets and goodwill | 5 | 1,299,877 | 1,368,356 |
| Property, plant, and equipment | | 255,917 | 208,193 |
| Vehicles under operating leases | 3 | 88,973 | 120,626 |
| Deferred tax asset | | — | 3,850 |
| Other investments | 10 | 2,185 | — |
| Other non-current assets | | 2,211 | 1,682 |
| **Total non-current assets** | | 1,649,163 | 1,702,707 |
| Current assets | | | |
| Cash and cash equivalents | | 988,259 | 756,677 |
| Marketable securities | | — | 1,258 |
| Trade receivables | | 102,117 | 157,753 |
| Trade receivables - related parties | 8 | 117,337 | 14,688 |
| Accrued income - related parties | 8 | 3,372 | 5,103 |
| Inventories | | 686,572 | 545,743 |
| Current tax assets | | 5,962 | 5,562 |
| Other current assets | | 96,680 | 120,202 |
| **Total current assets** | | 2,000,299 | 1,606,986 |
| **Total assets** | | 3,649,462 | 3,309,693 |

The accompanying notes are an integral part of these Unaudited Condensed Consolidated Financial Statements.

The Polestar Group
Unaudited Condensed Consolidated Statement of Financial Position
(in thousands of U.S. dollars unless otherwise stated)

| | Note | September 30, 2022 | December 31, 2021 |
|---|---|---|---|
| **Equity** | 6 | | |
| Share capital | | (21,090) | (1,865,909) |
| Other contributed capital | | (3,581,360) | (35,231) |
| Foreign currency translation reserve | | 1,437 | 16,784 |
| Accumulated deficit | | 3,464,333 | 1,761,860 |
| **Total equity** | | **(136,680)** | **(122,496)** |
| **Liabilities** | | | |
| Non-current liabilities | | | |
| Contract liabilities | 2 | (36,283) | (28,922) |
| Deferred tax liabilities | | (463) | (509) |
| Other non-current provisions | | (66,738) | (38,711) |
| Other non-current liabilities | | — | (11,764) |
| Earn-out liability | 9, 10 | (534,970) | — |
| Other non-current interest-bearing liabilities | 3 | (61,992) | (66,575) |
| **Total non-current liabilities** | | **(700,446)** | **(146,481)** |
| Current liabilities | | | |
| Trade payables | | (65,235) | (114,296) |
| Trade payables - related parties | 8 | (817,780) | (1,427,678) |
| Accrued expenses - related parties | 8 | (171,540) | (315,756) |
| Advance payments from customers | | (47,082) | (36,415) |
| Current provisions | | (47,781) | (44,042) |
| Liabilities to credit institutions | 7 | (1,176,582) | (642,338) |
| Current tax liabilities | | (5,222) | (13,089) |
| Interest-bearing current liabilities | 3 | (16,936) | (10,283) |
| Interest-bearing current liabilities - related parties | 8 | (8,986) | (13,789) |
| Contract liabilities | 2 | (45,621) | (58,368) |
| Class C Shares liability | 9, 10 | (27,500) | — |
| Other current liabilities | | (314,604) | (364,662) |
| Other current liabilities - related parties | 8 | (67,467) | — |
| **Total current liabilities** | | **(2,812,336)** | **(3,040,716)** |
| **Total liabilities** | | **(3,512,782)** | **(3,187,197)** |
| **Total equity and liabilities** | | **(3,649,462)** | **(3,309,693)** |

The accompanying notes are an integral part of these Unaudited Condensed Consolidated Financial Statements.

41.     The financial statements in ¶ 40 were materially false and misleading at the time they were made because the Company underreported accrued liabilities and assets.

42.     On April 14, 2023, the Company filed with the SEC its Annual Report on Form 20-F for the year ended December 31, 2022 (the "2022 Annual Report"). Attached to the 2022 Annual Report were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Ingenlath and Malmqvist attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and

the disclosure of all fraud.

43.    The 2022 Annual Report disclosed internal control weaknesses as

follows:

> Polestar management, with the participation of our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) of the Securities Exchange Act of 1934, as amended, or the Exchange Act) as of December 31, 2022. Based on that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures as of December 31, 2022 were not effective for the reasons set forth below. In connection with the audit of Polestar's financial statements as of the year ended December 31, 2022, management concluded that there were four material weaknesses in internal control over financial reporting as of December 31, 2022: (i) The controlling department does not have a sufficient number of qualified personnel connecting operations and finance and the accounting function does not have fully formalized accounting processes or a sufficient number of personnel with technical accounting and SEC regulatory reporting expertise to perform reviews of financial reporting matters and other key controls, including performing timely reviews of work performed by external advisors. This caused a failure to design and maintain an effective control environment with the appropriate associated control activities; (ii) A lack of appropriate processes and controls to recognize revenue in accordance with IFRS 15; (iii) A lack of appropriate processes and controls to properly recognize intangible assets at period end in accordance with service agreements for upcoming car models; and (iv) Insufficient processes and controls over the existence, completeness and valuation of inventory.

44.    The 2022 Annual Report stated that in 2022, management had

completed the following remedial actions:

- designed and implemented internal control framework to cover entity level, business processes and information technology risks;
- strengthened finance function through the addition of accounting and financial compliance personnel and training; and
- designed and implemented controls to support appropriate revenue recognition.

45.    The 2022 Annual Report in addition stated that the "current remediation plan includes the following":

- continue hiring additional accounting and finance resources with appropriate technical accounting and reporting experience to execute key controls related to various financial reporting processes;
- continue to document, evaluate, remediate, and test internal controls over financial reporting, including those that operate at a sufficient level of precision and frequency or that evidence the performance of the control; and
- continue to assess information technology general controls and, as necessary, design and implement enhancements to such controls.

46.    The statements in ¶¶ 43-45 were materially false and misleading because they underreported the Company's internal control issues, considering that the 2022 Annual Report did not disclose material issues with accounting for the Company's unique tooling, which resulted in an underreporting of assets and accrued liabilities.

47.    The 2022 Annual Report contained the following financial statements:

Polestar Automotive Holding UK PLC
Consolidated Statement of Loss and Comprehensive Loss
(in thousands of U.S. dollars except per share data and unless otherwise stated)

| Consolidated Statement of Loss | Note | For the year ended December 31, | | |
|---|---|---|---|---|
| | | 2022 | 2021 | 2020 |
| Revenue | 4 | 2,461,896 | 1,337,181 | 610,245 |
| Cost of sales | 5 | (2,342,453) | (1,336,321) | (553,724) |
| **Gross profit** | | **119,443** | **860** | **56,521** |
| Selling, general and administrative expense | 5 | (864,598) | (714,724) | (314,926) |
| Research and development expense | 5 | (167,242) | (232,922) | (183,849) |
| Other operating income and expense | 8 | (1,565) | (48,053) | 1,766 |
| Listing expense | 16 | (372,318) | — | — |
| **Operating loss** | | **(1,286,280)** | **(994,839)** | **(440,488)** |
| Finance income | 9 | 8,552 | 32,970 | 3,199 |
| Finance expense | 9 | (108,435) | (45,249) | (34,034) |
| Fair value change - Earn-out rights | 16 | 902,068 | — | — |
| Fair value change - Class C Shares | 16 | 35,090 | — | — |
| **Loss before income taxes** | | **(449,005)** | **(1,007,118)** | **(471,323)** |
| Income tax expense | 11 | (16,784) | (336) | (13,535) |
| **Net loss** | | **(465,789)** | **(1,007,454)** | **(484,858)** |
| **Net loss per share (in U.S. dollars)** | 12 | | | |
| Basic and diluted | | (0.23) | (0.53) | (0.29) |

| Consolidated Statement of Comprehensive Loss | | | |
|---|---|---|---|
| **Net loss** | (465,789) | (1,007,454) | (484,858) |
| Other comprehensive income (loss): | | | |
| Items that may be subsequently reclassified to the Consolidated Statement of Loss: | | | |
| Exchange rate differences from translation of foreign operations | 4,519 | (33,149) | 30,266 |
| **Total other comprehensive income (loss)** | **4,519** | **(33,149)** | **30,266** |
| **Total comprehensive loss** | **(461,270)** | **(1,040,603)** | **(454,592)** |

Consolidated Statement of Financial Position
(in thousands of U.S. dollars unless otherwise stated)

| | Note | As of the year ended December 31, | |
| --- | --- | --- | --- |
| | | 2022 | 2021 |
| **Assets** | | | |
| Non-current assets | | | |
| Intangible assets and goodwill | 13 | 1,396,477 | 1,368,356 |
| Property, plant and equipment | 10, 14 | 258,048 | 208,193 |
| Vehicles under operating leases | 10 | 92,198 | 120,626 |
| Other non-current assets | 15 | 5,306 | 1,682 |
| Deferred tax asset | 11 | 7,755 | 3,850 |
| Other investments | 15 | 2,333 | — |
| **Total non-current assets** | | **1,762,117** | **1,702,707** |
| Current assets | | | |
| Cash and cash equivalents | 15 | 973,877 | 756,677 |
| Marketable securities | 15 | — | 1,258 |
| Trade receivables | 17 | 246,107 | 157,753 |
| Trade receivables - related parties | 17, 25 | 74,996 | 14,688 |
| Accrued income - related parties | 25 | 49,060 | 5,103 |
| Inventories | 18 | 658,559 | 545,743 |
| Current tax assets | | 7,184 | 5,562 |
| Assets held for sale | 26 | 63,224 | — |
| Other current assets | 19 | 107,327 | 120,202 |
| **Total current assets** | | **2,180,334** | **1,606,986** |
| **Total assets** | | **3,942,451** | **3,309,693** |
| **Equity** | | | |
| Share capital | | (21,165) | (1,865,909) |
| Other contributed capital | | (3,584,232) | (35,231) |
| Foreign currency translation reserve | | 12,265 | 16,784 |
| Accumulated deficit | | 3,726,775 | 1,761,860 |
| **Total equity** | 20 | **133,643** | **(122,496)** |
| **Liabilities** | | | |
| Non-current liabilities | | | |
| Non-current contract liabilities | 4 | (50,252) | (28,922) |
| Deferred tax liabilities | 11 | (476) | (509) |
| Other non-current provisions | 21 | (73,985) | (38,711) |
| Other non-current liabilities | 15 | (14,753) | (11,764) |
| Earn-out liability | 16 | (598,570) | — |
| Other non-current interest-bearing liabilities | 10, 15 | (85,556) | (66,575) |
| **Total non-current liabilities** | | **(823,592)** | **(146,481)** |
| Current liabilities | | | |
| Trade payables | 15 | (98,458) | (114,296) |
| Trade payables - related parties | 15, 25 | (957,497) | (1,427,678) |
| Accrued expenses - related parties | 25 | (184,902) | (315,756) |
| Advance payments from customers | 15 | (40,869) | (36,415) |
| Current provisions | 21 | (74,907) | (44,042) |
| Liabilities to credit institutions | 23 | (1,328,752) | (642,338) |
| Current tax liabilities | | (10,617) | (13,089) |
| Interest-bearing current liabilities | 10, 15 | (21,545) | (10,283) |
| Interest-bearing current liabilities - related parties | 25 | (16,690) | (13,789) |
| Current contract liabilities | 4 | (46,217) | (58,368) |
| Class C Shares liability | 16 | (28,000) | — |
| Other current liabilities | 22 | (393,790) | (364,662) |
| Other current liabilities - related parties | 25 | (70,258) | — |
| **Total current liabilities** | | **(3,252,902)** | **(3,040,716)** |
| **Total liabilities** | | **(4,076,094)** | **(3,187,197)** |
| **Total equity and liabilities** | | **(3,942,451)** | **(3,309,693)** |

Polestar Automotive Holding UK PLC
Consolidated Statement of Cash Flows
(in thousands of U.S. dollars unless otherwise stated)

| | Note | For the year ended December 31, | | |
| --- | --- | --- | --- | --- |
| | | 2022 | 2021 | 2020 |
| **Cash flows from operating activities** | | | | |
| Net loss | | (465,789) | (1,007,454) | (484,858) |
| Adjustments to reconcile net loss to net cash flows: | | | | |
| Depreciation and amortization | | 158,392 | 239,164 | 216,077 |
| Warranties | | 84,992 | 63,114 | 58,651 |
| Inventory impairment | | 27,877 | 31,984 | 35,984 |
| Finance income | | (8,552) | (32,969) | (3,199) |
| Finance expense | | 108,435 | 45,249 | 34,034 |
| Fair value change - Earn-out rights | | (902,068) | — | — |
| Fair value change - Class C Shares | | (35,090) | — | — |
| Listing expense | | 372,318 | — | — |
| Income tax expense | | 16,784 | 336 | 13,535 |
| Losses on disposals of assets | | — | — | 16 |
| Other non-cash expense and income | | 18,997 | 11,560 | 14,048 |
| Change in operating assets and liabilities: | | | | |
| Inventories | | (226,638) | (290,442) | (428,067) |
| Contract liabilities | | 13,373 | 70,220 | 17,071 |
| Trade receivables, prepaid expenses and other assets | | (220,118) | 48,574 | (268,004) |
| Trade payables, accrued expenses and other liabilities | | 52,801 | 519,676 | 764,661 |
| Interest received | | 8,552 | 1,396 | 3,199 |
| Interest paid | | (68,130) | (12,564) | (30,198) |
| Taxes paid | | (19,559) | — | — |
| **Cash used for operating activities** | | **(1,083,423)** | **(312,156)** | **(57,060)** |
| **Cash flows from investing activities** | | | | |
| Additions to property, plant and equipment | 14, 24 | (32,269) | (24,701) | (49,599) |
| Additions to intangible assets | 13, 24 | (681,204) | (104,971) | (194,108) |
| Additions to other investments | | (2,500) | — | — |
| **Cash used for investing activities** | | **(715,973)** | **(129,672)** | **(243,707)** |
| **Cash flows from financing activities** | | | | |
| Change in restricted deposits | | — | 48,830 | 134,681 |
| Proceeds from short-term borrowings | | 2,149,799 | 698,882 | 569,087 |
| Principal repayments of short-term borrowings | | (1,426,935) | (411,950) | (780,167) |
| Principal repayments of lease liabilities | | (18,905) | (8,578) | (2,298) |
| Proceeds from the issuance of share capital and other contributed capital | | 1,417,973 | 582,388 | 438,340 |
| Transaction costs | | (38,903) | — | — |
| **Cash provided by financing activities** | | **2,083,029** | **909,572** | **359,643** |
| Effect of foreign exchange rate changes on cash and cash equivalents | | (66,433) | (27,491) | 21,340 |
| **Net increase (decrease) in cash and cash equivalents** | | **217,200** | **440,253** | **80,226** |
| Cash and cash equivalents at the beginning of the period | | 756,677 | 316,424 | 236,198 |
| **Cash and cash equivalents at the end of the period** | | **973,877** | **756,677** | **316,424** |

Polestar Automotive Holding UK PLC
Consolidated Statement of Changes in Equity
(in thousands of U.S. dollars unless otherwise stated)

| | Note | Share capital | Other contributed capital | Currency translation reserve | Accumulated deficit | Total |
| --- | --- | --- | --- | --- | --- | --- |
| Balance as of January 1, 2020 | 20 | — | 879,232 | (13,901) | (274,169) | 591,162 |
| Net loss | | — | — | — | (484,858) | (484,858) |
| Other comprehensive income | | — | — | 30,266 | — | 30,266 |
| **Total comprehensive loss** | | **—** | **—** | **30,266** | **(484,858)** | **(454,592)** |
| Changes in the consolidated group | 3 | 880,412 | (879,232) | — | 4,621 | 5,801 |
| Issuance of new shares | | 438,340 | — | — | — | 438,340 |
| **Balance as of December 31, 2020** | | **1,318,752** | **—** | **16,365** | **(754,406)** | **580,711** |
| Net loss | | — | — | — | (1,007,454) | (1,007,454) |
| Other comprehensive loss | | — | — | (33,149) | — | (33,149) |
| **Total comprehensive loss** | | **—** | **—** | **(33,149)** | **(1,007,454)** | **(1,040,603)** |
| Issuance of Convertible Notes | | — | 35,231 | — | — | 35,231 |
| Issuance of new shares | | 547,157 | — | — | — | 547,157 |
| **Balance as of December 31, 2021** | | **1,865,909** | **35,231** | **(16,784)** | **(1,761,860)** | **122,496** |
| Net loss | | — | — | — | (465,789) | (465,789) |
| Other comprehensive income | | — | — | 4,519 | — | 4,519 |
| **Total comprehensive loss** | | **—** | **—** | **4,519** | **(465,789)** | **(461,270)** |
| Merger with Gores Guggenheim Inc. | 16 | | | | | — |
| Changes in the consolidated group | | (1,846,472) | 1,846,472 | — | 1,512 | 1,512 |
| Issuance of Volvo Cars Preference Shares | | 589 | 588,237 | — | — | 588,826 |
| Issuance to Convertible Note holders | | 43 | (43) | — | — | — |
| Issuance to PIPE investors | | 265 | 249,735 | — | — | 250,000 |
| Issuance to GGI shareholders | | 822 | 521,285 | — | — | 522,107 |
| Listing expense | | — | 372,318 | — | — | 372,318 |
| Transaction costs | | — | (38,903) | — | — | (38,903) |
| Earn-out rights | | — | — | — | (1,500,638) | (1,500,638) |
| Equity-settled share-based payment | 7 | 9 | 9,900 | — | — | 9,909 |
| **Balance as of December 31, 2022** | | **21,165** | **3,684,232** | **(12,265)** | **(3,726,778)** | **(133,643)** |

(Emphasis added).

48.    The financial statements in ¶ 47 were materially false and misleading

19

at the time they were made because the Company underreported accrued liabilities and assets.

49.    On August 14, 2024, the Company filed with the SEC its Annual Report on Form 20-F for the year ended December 31, 2023 (the "2023 Annual Report"). Attached to the 2023 Annual Report were signed certifications pursuant SOX signed by Defendants Ingenlath and Ansgar attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

50.    The 2023 Annual Report contained certain restated figures for 2022, but still contained materially false financial information because of, among other things, underreporting assets and accrued liabilities relating to the Company's unique tooling.

51.    The 2023 Annual Report disclosed internal control weaknesses, but underreported the issue, considering that it did not disclose material issues with accounting for the Company's unique tooling, which resulted in an underreporting of assets and accrued liabilities.

52.    The 2023 Annual Report included the following financial statements:

Polestar Automotive Holding UK PLC
Consolidated Statement of Loss and Comprehensive Loss
(in thousands of U.S. dollars except per share data and unless otherwise stated)

| Consolidated Statement of Loss | | For the year ended December 31, | | |
|---|---|---|---|---|
| | Note | 2023 | 2022 | 2021 |
| | | | (Restated)[1] | (Restated)[1] |
| Revenue | 4 | 2,378,562 | 2,444,105 | 1,346,347 |
| Cost of sales | 6 | (2,791,643) | (2,343,302) | (1,336,688) |
| Gross (loss) profit | | (413,081) | 100,803 | 9,659 |
| Selling, general and administrative expense | 6 | (949,683) | (838,367) | (685,049) |
| Research and development expense | 6 | (158,406) | (174,916) | (234,019) |
| Other operating income (expense), net | 9 | 41,204 | (305) | (50,716) |
| Listing expense | 18 | — | (372,318) | — |
| Operating loss | | (1,479,966) | (1,285,103) | (960,125) |
| Finance income | 11 | 69,454 | 8,552 | 32,970 |
| Finance expense | 11 | (213,321) | (108,402) | (45,218) |
| Fair value change - Earn-out rights | 18 | 443,168 | 902,068 | — |
| Fair value change - Class C Shares | 18 | 22,000 | 35,090 | — |
| Share of losses in associates | 10 | (43,304) | — | — |
| Loss before income taxes | | (1,201,969) | (447,795) | (972,373) |
| Income tax benefit (expense) | 13 | 7,138 | (29,660) | 3,075 |
| Net loss | | (1,194,831) | (477,455) | (969,298) |
| Net loss per share (in U.S. dollars) | 14 | | | |
| Class A - Basic and Diluted | | (0.57) | (0.24) | (0.51) |
| Class B - Basic and Diluted | | (0.57) | (0.24) | (0.51) |
| | | | | |
| Consolidated Statement of Comprehensive Loss | | | | |
| | | | | |
| Net loss | | (1,194,831) | (477,455) | (969,298) |
| Other comprehensive (loss) income: | | | | |
| Items that may be subsequently reclassified to the Consolidated Statement of Loss: | | | | |
| Exchange rate differences from translation of foreign operations | | (10,237) | 180 | (32,318) |
| Total other comprehensive (loss) income | | (10,237) | 180 | (32,318) |
| Total comprehensive loss | | (1,205,068) | (477,275) | (1,001,616) |

Consolidated Statement of Financial Position
(in thousands of U.S. dollars unless otherwise stated)

| | Note | As of the year ended December 31, | |
| --- | --- | --- | --- |
| | | 2023 | 2022 |
| | | | (Restated)[1] |
| **Assets** | | | |
| Non-current assets | | | |
| Intangible assets and goodwill | 15 | 1,412,729 | 1,394,282 |
| Property, plant and equipment | 12, 16 | 316,867 | 275,954 |
| Vehicles under operating leases | 12 | 67,931 | 97,186 |
| Other non-current assets | 17 | 7,212 | 5,306 |
| Deferred tax assets | 13 | 43,041 | 11,287 |
| Other investments | 17 | 2,414 | 2,333 |
| **Total non-current assets** | | **1,850,194** | **1,786,348** |
| Current assets | | | |
| Cash and cash equivalents | 17 | 768,927 | 973,877 |
| Trade receivables | 19 | 126,205 | 239,578 |
| Trade receivables - related parties | 19, 27 | 61,026 | 79,225 |
| Accrued income - related parties | 27 | 152,605 | 49,060 |
| Inventories | 20 | 939,359 | 630,154 |
| Current tax assets | | 9,270 | 7,184 |
| Assets held for sale | 28 | — | 56,001 |
| Other current assets | 21 | 204,142 | 112,983 |
| Other current assets - related parties | 27 | 9,576 | — |
| **Total current assets** | | **2,271,110** | **2,148,062** |
| **Total assets** | | **4,121,304** | **3,934,410** |
| **Equity** | | | |
| Share capital | | (21,168) | (21,165) |
| Other contributed capital | | (3,615,187) | (3,584,232) |
| Foreign currency translation reserve | | 26,010 | 15,773 |
| Accumulated deficit | | 4,872,644 | 3,677,813 |
| **Total equity** | 22 | **1,262,299** | **88,189** |
| Total equity | 22 | 1,262,299 | 88,189 |
| **Liabilities** | | | |
| Non-current liabilities | | | |
| Non-current contract liabilities | 4 | (63,063) | (49,018) |
| Deferred tax liabilities | 13 | (3,335) | (12,470) |
| Other non-current provisions | 23 | (104,681) | (75,362) |
| Other non-current liabilities | 17 | (73,149) | (27,859) |
| Earn-out liability | 18 | (155,402) | (598,570) |
| Other non-current interest-bearing liabilities | 12, 17 | (54,439) | (31,326) |
| Other non-current interest-bearing liabilities - related parties | 27 | (1,409,244) | (43,643) |
| **Total non-current liabilities** | | **(1,863,313)** | **(838,248)** |
| Current liabilities | | | |
| Trade payables | 17 | (92,441) | (97,418) |
| Trade payables - related parties | 17, 27 | (275,704) | (935,161) |
| Accrued expenses - related parties | 27 | (450,000) | (157,426) |
| Advance payments from customers | 17 | (16,415) | (35,717) |
| Current provisions | 23 | (94,887) | (72,849) |
| Liabilities to credit institutions | 25 | (2,023,582) | (1,326,388) |
| Current tax liabilities | | (12,812) | (14,394) |
| Interest-bearing current liabilities | 12, 17 | (19,547) | (11,935) |
| Interest-bearing current liabilities - related parties | 27 | (68,332) | (26,618) |
| Current contract liabilities | 4 | (112,062) | (45,119) |
| Class C Shares liability | 18 | (6,000) | (28,000) |
| Other current liabilities | 24 | (347,902) | (364,264) |
| Other current liabilities - related parties | 27 | (606) | (69,062) |
| **Total current liabilities** | | **(3,520,290)** | **(3,184,351)** |

F-7

Table of Contents

| | | | |
| --- | --- | --- | --- |
| **Total liabilities** | | (5,383,603) | (4,022,599) |
| **Total equity and liabilities** | | (4,121,304) | (3,934,410) |

1 - Refer to Note 31 - Restatement of prior period financial statements for reconciliations between originally reported and as revised annual amounts

Polestar Automotive Holding UK PLC
Consolidated Statement of Cash Flows
(in thousands of U.S. dollars unless otherwise stated)

| | Note | For the year ended December 31, | | |
| --- | --- | --- | --- | --- |
| | | 2023 | 2022 (Restated)[1] | 2021 (Restated)[1] |
| **Cash flows from operating activities** | | | | |
| Net loss | | (1,194,831) | (477,455) | (969,298) |
| Adjustments to reconcile net loss to net cash flows: | | | | |
| Depreciation and amortization expense | 6 | 115,010 | 142,991 | 217,841 |
| Warranty provisions | 23 | 65,543 | 91,283 | 57,480 |
| Impairment of inventory | 6, 20 | 134,877 | 14,830 | 30,782 |
| Impairment of property, plant, and equipment, vehicles under operating leases, and intangible assets | 6, 12, 15, 16 | 351,241 | — | — |
| Finance income | 11 | (69,454) | (8,552) | (32,970) |
| Finance expense | 11 | 213,321 | 108,402 | 45,218 |
| Fair value change - Earn-out rights | 18 | (443,168) | (902,068) | — |
| Fair value change - Class C Shares | 18 | (22,000) | (35,090) | — |
| Listing expense | 18 | — | 372,318 | — |
| Income tax benefit (expense) | 13 | (7,138) | 29,660 | (3,075) |
| Share of losses in associates | 10 | 43,304 | — | — |
| Gain on sale of asset grouping | 28 | (16,334) | — | — |
| Loss on derecognition and disposal of property, plant, and equipment and intangible assets | 15, 16 | 10,892 | 11,036 | — |
| Litigation provisions | 23 | 35,676 | — | — |
| Other provisions | 23 | 19,890 | 23,367 | 11,560 |
| Unrealized exchange (loss) gain on trade payables | | 26,787 | (26,672) | 9,876 |
| Other non-cash expense and income | | (8,510) | 11,266 | — |
| Change in operating assets and liabilities: | | | | |
| Inventories | 20 | (358,392) | (186,393) | (283,776) |
| Contract liabilities | 4 | 77,424 | 21,629 | 59,074 |
| Trade receivables, prepaid expenses, and other assets | 21, 26 | (151,634) | (222,691) | 57,119 |
| Trade payables, accrued expenses, and other liabilities | 24, 26 | (459,002) | 21,981 | 496,782 |
| Interest received | | 32,280 | 8,552 | 1,396 |
| Interest paid | | (220,147) | (68,130) | (12,564) |
| Taxes paid | | (35,477) | (19,559) | — |
| **Cash used for operating activities** | | **(1,859,842)** | **(1,089,295)** | **(314,555)** |
| **Cash flows from investing activities** | | | | |
| Additions to property, plant, and equipment | 16, 26 | (137,400) | (32,269) | (24,701) |
| Additions to intangible assets | 15, 26 | (457,364) | (674,275) | (102,236) |
| Additions to other investments | | — | (2,500) | — |
| Proceeds from sale of property, plant, and equipment | 16 | 1,779 | — | — |
| Proceeds from sale of asset grouping | 28 | 153,586 | — | — |
| **Cash used for investing activities** | | **(439,399)** | **(709,044)** | **(126,937)** |
| **Cash flows from financing activities** | | | | |
| Change in restricted deposits | | (1,906) | — | 48,830 |
| Proceeds from short-term borrowings | 25, 26, 27 | 3,262,831 | 2,149,799 | 698,882 |
| Proceeds from long-term borrowings | 26, 27 | 1,381,738 | — | — |
| Proceeds from related party capital contribution | 22, 27 | 25,565 | — | — |
| Proceeds from issuance of share capital and other contributed capital | 18, 22 | — | 1,417,973 | 582,388 |
| Repayments of borrowings | 25, 26, 27 | (2,553,008) | (1,426,935) | (411,950) |
| Repayments of lease liabilities | 12, 26 | (21,916) | (19,448) | (8,913) |

53.     The financial statements in ¶ 52 were materially false and misleading at the time they were made because the Company underreported accrued liabilities and assets.

54.     On August 29, 2024, Polestar filed with the SEC a current report on Form 6-K that was signed by Defendant Ansgar. This 6-K contained Polestar's Q2 2024 financial results.

55.     The financial information included in the Form 6-K was materially false and misleading because of, among other things, under reported accrued liabilities.

56.     The statements contained in ¶¶ 40, 43, 44, 45, 47 and 52 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Polestar's financial statements during the Class Period were materially misstated; (2) Polestar understated its internal control weaknesses; and (3) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

57.     On January 9, 2025, Polestar announced: "To align more closely with sector convention, Polestar has amended its definition of global volumes, with the new definition being retail sales representing sales to end customers." See https://investors.polestar.com/news-releases/news-release-details/polestar-announces-global-volumes-fourth-quarter.

*58.*     Polestar acknowledged that its previous definition had included the sum of: (a) external sales of new vehicles without repurchase obligations, ***(b) external sales of vehicles with repurchase obligations, and (c) internal use vehicles for demonstration and commercial purposes or to be used by Polestar employees (vehicles are owned by Polestar and included in inventory).***

59.     Polestar also restated its sales numbers under the new definition for the previous ten quarters, with some quarters showing a variation of approximately 10%.

60.     Moreover, the Final Proxy Statement/Prospectus explains that vehicles sold with repurchase obligations are accounted for as leasing revenue, and also provides that Polestar enters into leaseback transactions that are not recorded as sales for accounting purposes.

61.    On January 16, 2025, before the market opened, Polestar filed a current report on Form 6-K with the SEC (the "Restatement Announcement"). The Restatement Announcement stated the following:

On January 14, 2025, the management of Polestar Automotive Holding UK PLC (the "Company"), in consultation with the Audit Committee of the Board of Directors (the "Audit Committee"), concluded that the Company's previously issued audited financial statements included within Annual Reports on Form 20-F for the years ended December 31, 2022 and December 31, 2023 (the "Audited Affected Financials") and the unaudited interim financial information included within Current Reports on Form 6-K for the quarterly periods ending on and falling between September 30, 2022 and June 30, 2024 (the "Unaudited Affected Financials" and together with the Audited Affected Financials, the "Affected Financials") contain errors that warrant restatement of the Audited Affected Financials and the interim financial information for the six-month periods ended June 30, 2023, and June 30, 2024.

The primary reason for this restatement decision relates to balance sheet errors concerning the Company's unique tooling (further explained below), *which have resulted in an underreporting of assets and accrued liabilities in matching amounts for the periods referenced above*. The correction of these balance sheet errors will have no impact on previously reported revenue, operating loss, net loss, adjusted EBITDA or net assets, nor do these corrections affect the Company's underlying business operations, cash position, or liquidity.

As previously disclosed, the Company owns unique tooling which is used in the manufacturing of its vehicles. This unique tooling has previously been recognised as property plant and equipment once either the production standard part process test is conducted or production utilizing the unique vendor tools has occurred. *Management has determined that certain unique tooling should have instead been recognised as assets under construction ("AUC") according to the progression of work, resulting in a material understatement of AUC and a corresponding understatement of accrued liabilities in the Affected Financials*. The reconsideration of AUC recognition will change the timing of recognising AUC but will not change the expected total amount of AUC recognised.

A reclassification of cash flows between operating and investing activities and other smaller errors that have been identified will also be corrected as part of this restatement process.

*As a result of the above noted accounting errors, the Audit Committee, based on the recommendation of, and after consultation with, the Company's management, have further concluded that the Affected Financials should no longer be relied upon*, including the associated report of the Company's independent registered public accounting firm, Deloitte AB ("Deloitte"). Similarly, any quarterly results issued during the aforementioned periods, press releases, shareholder communications, investor presentations or other communications describing relevant portions of the Affected Financials should no longer be relied upon.

The Company is in the process of finalizing the restatement adjustments and evaluating the impact of the above accounting errors on its assessment of the effectiveness of internal control over financial reporting. The Company intends to restate the Audited Affected Financials in an amendment to its Annual Report on Form 20-F for the year ended December 31, 2023. Regarding the Unaudited Affected Financials, the Company intends to restate the interim financial information for the six-month periods ended June 30, 2023, and June 30, 2024, through an amendment to its Current Report on Form 6-K filed with the U.S. Securities and Exchange Commission on September 30, 2024. Except as described in the preceding sentence, the Company does not expect to restate the quarterly Unaudited Affected Financials.

The conclusions of the Audit Committee and Company management described above have been discussed with Deloitte.

(Emphasis added).

62.    On this news, the price of Class A Polestar ADSs declined by $0.135 per ADS, or 11%, on higher-than-average volume, to close at $1.0850 on January 16, 2025.

63.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

64.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who (1) purchased or otherwise acquired the securities of Polestar between June 24, 2022 and January 16, 2025, both dates inclusive (the "Class Period"); and/or (2) beneficially owned and/or held the securities of Gores Guggenheim, Inc. ("GGI") as of the record date of May 18, 2022 and were provided the Final Proxy Statement/Prospectus. Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

65.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Polestar securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds, if not thousands of members in the proposed Class.

66.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

67.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

68.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by the Polestar Individual Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether the Polestar Individual Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

29

- whether the Polestar Individual Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether the Polestar Individual Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Polestar securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein;

- whether the Final Proxy Statement/Prospectus was materially false or misleading;

- whether the GGI Individual Defendants are responsible for the alleged misrepresentations in the Final Proxy Statement/Prospectus; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

69.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

70.    Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Polestar securities met the requirements for listing, and were listed and actively traded on the NASDAQ, an efficient market;

- As a public issuer, the Company filed public reports;

- the Company communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

71.    Based on the foregoing, the market for the Company securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the common units,

and Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

72.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against Polestar and the Polestar Individual Defendants

73.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

74.     This Count is brought on behalf of investors who bought Polestar securities during the Class Period, and is asserted against Defendants Polestar and the Polestar Individual Defendants based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

75.     During the Class Period, these Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order

to make the statements made, in light of the circumstances under which they were made, not misleading.

76.    These Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

77.    These Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of the Company, their control

over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

78.    The Polestar Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Polestar personnel to members of the investing public, including Plaintiffs and the Class.

79.    As a result of the foregoing, the market price of Polestar securities was artificially inflated during the Class Period. In ignorance of the falsity of these Defendants' statements, Plaintiffs and the other members of the Class relied on the statements described above and/or the integrity of the market price of Polestar securities during the Class Period in purchasing Polestar securities at prices that were artificially inflated as a result of these Defendants' false and misleading statements.

80.    Had Plaintiffs and the other members of the Class been aware that the market price of Polestar securities had been artificially and falsely inflated by

Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Company securities at the artificially inflated prices that they did, or at all.

81.    As a result of the wrongful conduct alleged herein, Plaintiffs and other members of the Class have suffered damages in an amount to be established at trial.

82.    By reason of the foregoing, these Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiffs and the other members of the Class for substantial damages which they suffered in connection with their purchase of Polestar securities during the Class Period.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Polestar Individual Defendants**

83.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84.    During the Class Period, the Polestar Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's business practices.

85.    As officers of a public business, the Polestar Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

86.    Because of their positions of control and authority as senior executives and/or directors, the Polestar Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Polestar Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Polestar Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company securities.

87.    By reason of the above conduct, the Polestar Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**COUNT III**
**Violations of Section 14(a) of the Exchange Act**
**Against the GGI Individual Defendants**

88.    Plaintiffs repeat and reallege the allegations contained in the foregoing ¶¶ 29-38 as if fully set forth herein.

89.    This Count is brought on behalf of investors who beneficially owned and/or held the securities of GGI as of the record date of May 18, 2022 and were provided the Final Proxy Statement/Prospectus, and is asserted against the GGI Individual Defendants based upon Section 14(a) of the Exchange Act14 and Rule 14a-9 promulgated thereunder (the "Proxy Claims").

90.    The Proxy Claims are based solely on negligence. They are not based on any knowing or reckless conduct by or on behalf of the GGI Individual Defendants, and Plaintiffs specifically disclaim any allegations of fraud, scienter, or recklessness in these non-fraud claims.

91.    The basis of the Proxy Claims is that the GGI Individual Defendants' statements issued to solicit shareholder approval of the Merger, including the Final Proxy Statement/Prospectus, contained misstatements and/or omissions of material facts.

92.    In particular, both Polestar's January 16, 2025 "Restatement Announcement," and Polestar's January 9, 2025 announcement adopting a new sales definition and recasting its volume numbers for the previous ten quarters

rendered statements in the Final Proxy Statement/Prospectus materially false and misleading. The ListCo Projections contained in the Final Proxy Statement/Prospectus for the years 2022-2025 suffer from the same problems that led Polestar to restate its financials and to tell investors not to rely on them.

93. In addition, the sales projections contained in the Final Proxy Statement/Prospectus are materially false and misleading to the extent they used the sales definition that Polestar later admitted was out of line for the industry. Moreover, as the Final Proxy Statement/Prospectus contains a comparative analysis comparing Polestar to peer companies in the industry, this comparative analysis is false and misleading so long as it used the volume figures that Polestar used prior to the Fourth Quarter of 2024.

94. The GGI Individual Defendants' statements issued to solicit shareholder approval of the Merger, including the Final Proxy Statement/Prospectus, and the documents incorporated therein, and other proxy solicitation materials, contained statements that, at the time and in light of the circumstances under which they were made, were false and misleading with respect to material facts, and omitted to state material facts necessary in order to make the statements therein not false or misleading.

95. By means of the Final Proxy Statement/Prospectus and documents attached thereto or incorporated by reference therein and other proxy solicitation

materials, these Defendants sought to secure Plaintiffs' and other Class members' approval of the Merger and solicited proxies from Plaintiffs and other members of the Class.

96.    Each Defendant named in this Count acted negligently in making inaccurate statements of material facts, and/or omitting material facts required to be stated in order to make those statements not misleading. These Defendants were required to ensure that the Final Proxy Statement/Prospectus and all other proxy solicitation materials fully and fairly disclosed all material facts to allow an investor to make an informed investment decision. These Defendants also acted negligently in failing to update the Final Proxy Statement/Prospectus.

97.    The solicitations described herein were essential links in the accomplishment of the Merger.

98.    Plaintiffs and other members of the Class eligible to vote on the Merger were misled by these Defendants' false and misleading statements and omissions, were denied the opportunity to make a fully informed decision in voting on the Merger, and were damaged as a direct and proximate result of the untrue statements and omissions set forth herein.

99.    The materially false and misleading statements and omissions set for the above proximately caused foreseeable losses to Plaintiffs and members of the Class.

100.  Plaintiffs could not have learned of the falsity of the Final Proxy Statement/Prospectus until Polestar issued its "Restatement Announcement" and its announcement correcting its definition of global volumes in January of 2025.

101.  By reason of the foregoing, these Defendants violated Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a 9 promulgated thereunder, 17 C.F.R. § 240.14a 9.

**COUNT IV**
**Violations of Section 20(a) of the Exchange Act in Connection with the Proxy Claims**
**Against the GGI Individual Defendants**

102.  Plaintiffs repeat and reallege those allegations that pertain to the Proxy Claims as if fully set forth herein.

103.  This claim does not sound in fraud. For the purposes of this claim, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct. This claim, like the Proxy Claim, is based solely on negligence.

104.  This Count is asserted against the GGI Individual Defendants, and is based upon Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

105.  As set forth above, the GGI Individual Defendants each violated Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons of GGI, these

Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the GGI Individual Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

106. The solicitations described herein were essential links in the accomplishment of the Merger.

107. Plaintiffs and other members of the Class eligible to vote on the Merger were misled by these Defendants' false and misleading statements and omissions, were denied the opportunity to make a fully informed decision in voting on the Merger, and were damaged as a direct and proximate result of the untrue statements and omissions set forth herein.

108. The untrue statements and omissions as set forth above proximately caused foreseeable losses to Plaintiffs and other members of the Class.

109. By reason of the foregoing, the GGI Individual Defendants violated Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

## **<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating Plaintiffs as Lead Plaintiffs and certifying Plaintiffs as class representatives under Rule 23 of

the Federal Rules of Civil Procedure and designating Plaintiffs' counsel as Lead Counsel;

(b)    awarding damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c)    awarding Plaintiffs and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding Plaintiffs and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: May 23, 2025                          **GAINEY McKENNA & EGLESTON**

<u>/s/ Barry Gainey</u>
Barry Gainey
375 Abbott Road
Paramus, NJ 07652
Tel.: (201) 225-9001
Fax: (201) 225-9002
Email: bgainey@gme-law.com

Thomas J. McKenna
Gregory M. Egleston
260 Madison Ave., 22nd Floor
New York, NY 10016
Tel.: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiffs*

42

# CERTIFICATION

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint against Gores Guggenheim, Inc. n/k/a Polestar Automotive Holding UK PLC ("PSNY"), and certain of its officers and directors and I authorize the filing thereof.

2.      I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.      The following Schedule A is a list of all of the purchases and sales I have made in PSNY securities during the class period set forth in the complaint.  I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

5.      I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except for the following company(ies):

6.      I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this _____ day of _____, 2025.

Signature: _Frank Rodriguez_____

## SCHEDULE A

## FRANK RODRIGUEZ

TRANSACTIONS

| PURCHASES | | | | SALES | | |
|---|---|---|---|---|---|---|
| DATE | SHARES | PRICE | | DATE | SHARES | PRICE |
| 11/18/2021 | 81 | ($13.50) | | 11/22/2021 | 81 | $14.30 |
| 12/6/2021 | 160 | ($11.50) | | | | |
| 12/13/2021 | 165 | ($11.30) | | | | |
| 9/6/2022 | 15 | ($6.50) | | | | |
| 10/19/2022 | 24 | ($4.75) | | | | |
| 4/15/2024 | 26 | ($1.31) | | | | |

## CERTIFICATION

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint against Gores Guggenheim, Inc. n/k/a Polestar Automotive Holding UK PLC ("PSNY"), and certain of its officers and directors and I authorize the filing thereof.

2.      I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.      The following Schedule A is a list of all of the purchases and sales I have made in PSNY securities during the class period set forth in the complaint.  I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

5.      I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except for the following company(ies):

6.      I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this _____ day of _____, 2025.

Signature:_____

**SCHEDULE A**

**KINA THOMAS**

TRANSACTIONS

**PURCHASES**

| DATE | SHARES | PRICE |
|------|--------|-------|
| 11/17/2021 | 50 | ($15.40) |
| 12/7/2021 | 3 | ($12.27) |
| 7/25/2023 | 12 | ($4.18) |
| 11/10/2023 | 35 | ($2.01) |